[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 382 
The only questions presented for consideration upon this writ of error are, whether the refusals to charge were correct or not. They will be considered in the order presented to the court. It is insisted on, by the counsel for the prisoner, in support of the first request to charge, that the instrument set out in the indictment is not, upon its face, the subject of forgery, as it is not addressed to any one. If it be essential that an order or request for the delivery of goods, to make it the subject of a forgery, should, on its face, be directed to a particular person, there then would, doubtless, be force in this objection. A reference to the language of the section of the statute, would seem to indicate that there is not much force in this argument. It declares that "every person who, with intent to injure or defraud, shall falsely make, alter, forge or counterfeit * * * any instrument in writing, being or purporting to be the act of another, by which any pecuniary demand or obligation shall be, or shall purport to be, created, increased, discharged or diminished, or by which any rights of property whatever shall be or purport to be transferred, conveyed, discharged or diminished, or in any manner affected, by which false making, forging, altering or counterfeiting, any person may be affected, bound, or in any way injured, in his person or property, upon conviction thereof, shall be adjudged," c. (2 R.S., p. 673, § 33.) It is averred, in the indictment, that this instrument was in writing; it purported to be the act of Daily Co., and, by which, it purported to create a pecuniary demand or obligation by them; and, in addition, the property of the person accepting and acting in conformity with the request contained therein, would be transferred and conveyed. It therefore falls directly within the language of the section of the statute, thus *Page 383 
far considered. As a further requisite of the instrument, it is declared, that by it, if the same were genuine and true, any person might be bound, affected or in any way injured, in his person or property. If the instrument had been genuine, Daily 
Co. would have been bound thereby, and affected in their property; and, if genuine, the person accepting and acting in conformity therewith would also have been affected and injured in his property. The paper under consideration would, therefore, seem to fall within the very words of the statute, and is precisely of that character which the legislature, by the forgery of, and the passing and uttering of which, intended to subject the offender to indictment and punishment.
COWEN, J., in People v. Stearnes (21 Wend., 409), discusses fully the cases and the doctrine relating to the crime of forgery, and arrives at the conclusion that an indictment for forgery is good, if in it be set forth the instrument or writing alleged to have been forged, averring it to have been falsely made, with the intent to injure and defraud some person or body corporate, provided the instrument be such as on its face shows that the rights or property of such person or body corporate may thereby be injured or affected. In that case, the prisoner was indicted for forging an order, directed to the cashier of the Union Bank, purporting to be signed by the cashier of the Bank of Kentucky, requesting the delivery of certain plates of the latter bank to certain persons mentioned in the order, with intent to defraud the Bank of Kentucky, and divers other persons to the jurors unknown. COWEN, J., says, the inquiry is, whether the order was apparently available to transfer the plates of the Bank of Kentucky from the custody of their depositary to the hands of another. If so, the case is brought literally within the statute. He adds: "Whatever doubt might have existed at common law, whether it were to be deemed a mere false token, coming in as the ingredient of a criminal cheat, or a fraudulent forgery, which was in itself a crime, all difficulty is removed by the statute. Every instrument in writing which may affect property *Page 384 
— for example, an order, a letter, or a mere license — is made the subject of a felonious forgery. The indictment must show the forgery of an instrument, which, on being described, appears on its face naturally calculated to work some effect on property." These views met the approval of the Chancellor, in the same case, in the Court of Errors (23 Wend., 637), where he says: "The legislature, by the thirty-third section of the article of the Revised Statutes, relative to forgery, made a sweeping provision, which unquestionably embraces every other forgery of a writing, purporting to be the act of another person, which was by the common law a misdemeanor or a criminal offence; that is, every other forgery by which it is possible that any individual, or body politic or corporate, can be injured in any way, in his person or estate."
The Revisers, in their notes to this section, allude to the provisions of the Revised Laws, which contained an enumeration of a great number of instruments specifically described as the subjects of forgery. They say: "It has given occasion to many questions and decisions upon cases falling within the spirit and meaning of the act, but not within its terms. * * In principle, there can be no difference, in the injury to society or to an individual, or in the degree of moral turpitude, between the forgery of one instrument or another, by which the property, rights or interests of any one are affected. To avoid cavil: to reach every case of forgery that has ever been committed, or that ever can be committed; and to afford a definite and distinct rule, the preceding section has been prepared." With these lights before us, we can be at no loss to determine whether the paper under consideration falls within the language and intent of the statute. That it affects the rights and interests of property, cannot be doubted. That, if genuine, it worked a transfer of the property therein described, by whomsoever might be the owner and possessor thereof, to the persons signing the request for the delivery of the same, is too clear to be questioned. It is just such an instrument, therefore, as is embraced by the statute. On its face, it was sought to work a transfer of the property therein described, *Page 385 
whosoever might be the owner and possessor thereof. It manifestly contemplated presentation thereof to the person having that identical property in possession, and to defraud him of his property, by obtaining possession thereof. "It is the fabrication, with the intent to defraud; and the crime shall not be excused, because the offender may have committed a blunder in seeking his object." It is apparent that he knew who had the goods which he sought to obtain. The description of them in the instrument shows that he was aware they were in existence somewhere; and the fact that the paper was presented to the Meriden Cutlery Company, and the goods obtained from it, equally shows that the paper was concocted for the purpose of defrauding that Company. I am unable, therefore, to conceive any reason why the instrument would have been more perfect if it had stated on its face that it was to be presented to that Company. It was, of course, to be presented to it, as it had solely the goods described therein. There can be no doubt, I think, that this objection is entirely untenable. The cases in England to which we have been referred, have no application to an indictment under our statute. Clinch's case (2 Leach, 611), was an indictment under the statute of 7 Geo. II, chapter 22, for forging a warrant, or order, for money or goods. The paper forged was in these words: "Please send by the bearer 8 lbs. of that whorpe, Corn Market. L. De le Mockex." Baron PERRYN, in delivering the opinion of the judges, says, the order in the indictment was not directed to any person whatever, but merely expressed a desire that eight pounds of silk should be delivered to the bearer of it, without any direction from whom it was to be received. On this ground, the judges were of the opinion that this was not a warrant or order within the statute. So, also, the case of Rex
v. Cullen (5 Car. P., 116). The prisoner was indicted under the statute of 1 William IV, chapter 66, section 10, which declared if any person should forge, or utter, any warrant, order or request for the delivery or transfer of goods, with intent to defraud any person whatsoever, such offender shall be guilty of felony, c. The prisoner was indicted for forging *Page 386 
a certain request for the delivery of goods, in these words: "Per bearer, two 11-4 superfine counterpanes. T. Davis, E. Truell." The indictment also contained a count calling it an order. And the fifteen judges held that it was neither an order nor request within the meaning of the statute. It was not an order upon any one, nor a request to any one. It was, therefore, neither an order nor a request. But, as we have seen, our statute is broad and comprehensive, purposely omitting the enumeration or specification of the instruments which may be forged, and adopts the designation only of "any instrument." The language thus used was intended to cover every case of forgery that could be committed, and put an end to all question whether the particular paper forged was embraced by or specially enumerated in the statute. It is sufficient that the paper or instrument be of such a character that, by its use, another may be deprived of his property, or by which a pecuniary liability might be created.
The second exception is on the refusal to charge that the Meriden Cutlery Company could not be regarded as the subject of an intended fraud by the prisoner in the making or uttering this instrument; and the exception to that portion of the charge which stated that the Meriden Cutlery Company might properly be regarded as the subject of fraud. It had been proven on the trial, without objection, that the goods obtained on this paper writing were those belonging to and manufactured by the Meriden Cutlery Company; that said Company was located in the State of Connecticut, and was organized there in the year 1855, and had an agency in the city-of New York, where said instrument was presented, and where said goods were obtained thereon.
It is provided by the Revised Statutes (2 R.S., p. 675, § 46), that wherever "an intent to defraud is required to constitute forgery, it shall be sufficient if such intent appear to defraud the United States, any State or Territory, any body corporate, any county, city, town or village, or any public officer in his official capacity, any copartnership or any one of such partners, or any real person whatever." *Page 387 
The indictment in this case charged that the instrument was forged and uttered with intent to defraud the Meriden Cutlery Company. In stating this intent to defraud, it is sufficient to describe the party intended to be defrauded, with reasonable certainty. (2 Russell on Crimes, 367.) And in Lowel's case (1 Leach, 248; 2 East. P.C., p. 990, § 60), the indictment alleged an intent to defraud Messrs. Drummond Co. by the name of Mr. Drummond, Charing Cross; and the judges held that it was not necessary to describe the party meant with more particularity; for if any person could be intended from the words, who that person was, and whether he was the object of the meditated fraud, were matters for the consideration of the jury.
If that Company was a body corporate, or a copartnership, then the averment is within the language of the section of the Revised Statutes above quoted. The proof, as set out in the record, would seem to show that it was either a body corporate or a copartnership; and if either, it is quite immaterial which the proof made it out to be. In the case of De Bow v. The People
(1 Denio, 9), the prisoner was convicted of an intent to defraud the Bank of Warsaw; and the indictment contained the averment, that he had in his possession certain forged bank notes, with intent to defraud the Bank of Warsaw. The prosecution, on the trial, sought to show that such a corporation did exist, formed under articles of association under the general banking law of 1838. But the Supreme Court held that law to be unconstitutional, and that it followed that there was no such legal being as the Bank of Warsaw to be defrauded, and that the defendant had been improperly convicted. The principal element of this decision was overruled in Gifford v. Livingston, decided by the Court of Errors. (2 Denio, 380.)
It is, however, well settled that if in truth there was not any such Company, or if it never had any legal existence, the averment in the indictment in this case is sufficient. It is sufficiently broad to reach the individual members of the Company, or its agent in New York, or the persons whose names were falsely signed to the order, as they would all be included *Page 388 
in the description "of divers other persons to the jury unknown." (People v. Stearns, 23 Wend., 634.) In the case of thePeople v. Peabody (25 Wend., 472), the prisoner was indicted and convicted of the crime of forgery. The indictment alleged that the prisoner had in his possession notes purporting to be issued by the Bank of Warsaw, with the intention to utter the same as false, or to cause the same to be uttered, with intent to injure and defraud the said Bank of Warsaw, George Howell, Walter Durkee and others. The circuit judge charged the jury, that it was immaterial whether there was or not such a bank in existence as the Bank of Warsaw. The conviction was affirmed in the Supreme Court, and, in giving its opinion, the doctrine is laid down that there must be a real, existent body shown, capable of being defrauded. That in that case, this was shown by the articles of association creating the institution, under the general bank law. That it was not important to prove that the bank had commenced business; it is enough that it was in a condition in which it might be prejudiced by the act of the prisoner. The proof set out in the bill of exceptions in the present case shows the existence of the company mentioned in the indictment; that it had property, that it conducted and carried on business in the city of New York, and that it was actually defrauded by the act of the prisoner. Whether or not its corporate existence was legally established on the trial does not appear, or that it was made a question. It was proved that such a company had an existence, had property and was defrauded, and it could not have been necessary to have proven more. This Company was, therefore, capable of being defrauded, and might be the subject of a fraud. The exception, it may be here suggested, assumes the existence of the Company, and, in fact, only presents the question whether a company can be defrauded. Webster defines the word company to mean a firm, house, or partnership, or a corporation, as the East India Company, a banking or insurance company. Whichever of these meanings we attribute to the word as used in this indictment, there would be a sufficient and adequate designation of *Page 389 
the intent to defraud, within the meaning and language of our Revised Statutes. We think, therefore, the second exception taken was properly overruled, and that the court properly charged that the Meriden Cutlery Company might rightfully be regarded as a subject of fraud. There remains to be examined the third exception, taken on the refusal to charge that, if the grand jury, at the time of finding the indictment, and the petit jury, at the time of the trial, knew from the testimony who was to be and was defrauded, in the making and uttering this instrument, then the charge in the indictment that the prisoner intended to cheat and defraud certain persons, to the jury unknown, must be disregarded for variance from the evidence.
Several answers may be made to this request to charge, which conclusively show its unsoundness. In the first place the exception covers the whole proposition, and if any portion of it should not have been charged, it must fail. Now it is clear, that what the petit jury knew at the time of the trial, could and should have had no bearing on the form of the indictment, as to what was omitted or inserted therein. The proposition evidently meant to embrace the idea that if the grand jury knew at the time they framed the indictment, who the prisoner intended to cheat and defraud, and did not so state in the indictment, it was error to show on the trial who was actually defrauded.
We see no force in this request or error in the refusal to charge as requested. We have already seen, from the rule laid down by the judge in Lovel's case, that it is not necessary to the indictment particularly to designate the party meant to be defrauded. It is essential to aver that some real person or existent body was defrauded, or that the intent existed to defraud some such, and if any person could be indicated from the words used in the indictment, who that person was, and whether he was the meditated object of the fraud, are matters for the consideration of the jury on the trial. On the assumption that the request related solely to the knowledge of the grand jury, then the request was clearly erroneous, as it *Page 390 
assumed that the grand jury had knowledge, which nowhere appeared, and it would clearly have been error to have charged what had not appeared on the trial. There had been no evidence given as to what the grand jury knew on the subject, and the judge would not have been authorized to assume that they had knowledge of facts, in reference to which no evidence had been given. There was no foundation laid in the testimony for such a charge as requested, and it would have been, therefore, erroneous to have so charged. (People v. Rynders, 12 Wend., 432.)
We see no errors in the rulings at the trial, presented by the bill of exceptions, and are of opinion that the conviction should be affirmed.
All the judges concurring,
Judgment affirmed.