SUPREME COURT—APP. DIV.—FIRST DEPT.
February 4, 1910.

## THE PEOPLE v. SAMUEL BIDDISON.

(136 App. Div. 525.)

(1). FORGERY—OF BOND OF CORPORATION.

Prosecution for forgery, first degree. The defendant was charged with forging the bond of a corporation by signing the name of a trustee of the mortgage without authority. He claimed authority to make the signature under a power of attorney, but there was testimony that no such authority was given. Evidence examined, and *held*, to sustain a conviction.

(2). INDICTMENT—AMENDMENT.

Where, on a first trial, the court ordered the indictment amended by writing into it a transfer appearing upon the back of the forged instrument pasted upon the indictment, the court at a second trial has no power to strike out the amendment.

(3). SAME.

Moreover, such amendment was proper, as it merely brought out writing on the instrument which was physically covered up by the fact that it was pasted on the indictment, and, in any event, defendant is not prejudiced where the amendment was entirely immaterial to the cause of action.

(4). SAME—FRIVOLOUS OBJECTION.

A claim that an indictment is defective in that it alleges that a company was incorporated under the laws of the United States while, as a matter of fact, it was incorporated under the laws of the District of Columbia, is frivolous.

APPEAL by the defendant, Samuel M. Biddison, from a judgment of the Court of General Sessions of the Peace in and for the county of New York in favor of the plaintiff, rendered on the 6th day of April, 1909, convicting the defendant of the crime of forgery in the first degree, and also from an order denying his motion for a new trial and in arrest of judgment.

*Clark L. Jordan,* for the appellant.

*Robert C. Taylor* of counsel (*Charles S. Whitman, District Attorney*), for the respondent.

CLARK, J.:

In November, 1904, the defendant procured the incorporation of the " Central Coal, Lumber and Construction Company " in the District of Columbia, with a capital of $500,000 to buy and sell lands, lumber, coal and timber and to issue bonds on its assets, to sell stock or bonds and loan out the same and to do any other business connected therewith in accordance with its charter.

The defendant testified that he was one of the incorporators; that A. Graham Donnelly was another, and the three others lawyers' clerks in Washington, members of an incorporating concern that did that business; that he owned all the stock; that Donnelly was elected president; John R. Polk, secretary, and that he was elected a director, being one of the incorporators.

Donnelly testified that the defendant asked him to be an incorporator and that he objected upon the ground that he was not a commercial man, but that it was agreed that he was to go on for a dummy or straw man for the purposes of organization; that he did not know the name of the company until he saw it on the defendant's office door; that he never attended any meetings of the officers or board of directors, and he did not know that there were any directors. He gave a power of attorney to the defendant authorizing him to sign all papers, bonds, stock or other documents for and in relation to the business of the Central Coal, Lumber and Construction Company, but in nowise to bind him individually for obligations of said company, which was dated March 3, 1906.

Polk testified that he had resided in Indiana and had not been in New York from about the 23d of March, 1905, until

some time in February, 1909; that he was never present at any meeting of the board of directors of this company; that at the defendant's request he had given him a power of attorney dated the 18th of November, 1905.

In March, 1906, the defendant made an arrangement with King, a printer, for the printing of some bonds of the Central Coal, Lumber and Construction Company. Three hundred were to be printed on paper with brown borders and numbered from 1 to 300, and 300 were to be printed with orange-colored borders, and it is conceded that they were numbered from 1 to 300, and were identical in every respect with the brown bonds as far as the printed matter was concerned when they came off the press, except in the color. King testified that the defendant said that the orange bonds were wanted for samples. He also testified that he received his pay for printing them from Dunton.

Dunton testified that after he had advanced $100 to the defendant for a payment to be made on his house, the defendant said he wanted to get out these bonds in order to lend them to people who wanted to use them as collateral security, and it was necessary for him to live along until he got the bonds out, " and when he got the bonds out he would have no difficulty in lending the bonds, and I would be paid back my money, and he would take up the bonds that were deposited and float them all." That besides the $100 already referred to, he advanced $524 and that he received $200,000 of the brown bonds as security for the entire sum of $624; that he put these 200 brown bonds in the safe and that he had not received the $624 back that he paid.

The defendant was indicted for forging a bond of the Central Coal, Lumber and Construction Company and it was physically attached to the indictment. It was one of the orange bonds; it was for $1,000 with coupons attached. It was dated November 15, 1904, and bore the corporate seal and purported to bear the

signature of A. Graham Donnelly, president; attest, J. R. Polk, secretary. It was entitled " First mortgage, twenty year, 5% bond," and it recited that for value received the company promises to pay on the 15th of November, 1924, at the office of the trustee, New York city, to the registered owner of this bond $1,000 in gold coin of the United States of the present standard of weight and fineness, and to pay interest thereon from November 15, 1904, at the rate of five per cent. per annum. " This bond is one of a duly authorized issue of registered bonds of the company, the aggregate amount thereof is limited so that there shall never be at any time outstanding bonds of said issue for an aggregate sum exceeding $300,000, all of which bonds have been or may be issued under and in pursuance of, and are to be secured by a first mortgage or deed of trust, dated November 15, 1904, duly executed by the company to John A. P. Glore of New York, as Trustee, conveying the property and franchises of the Central Coal, Lumber and Construction Company, named in said mortgage or deed of trust, to which reference is hereby made for a description of the property and franchises mortgaged, and the nature and extent of the security, and the rights of the holders of said bonds under the same, and the terms and conditions upon which said bonds are issued. The Central Coal, Lumber and Construction Company reserve the right to redeem this bond upon any interest date upon giving ninety days' notice at 110% and accrued interest. This bond shall not become obligatory for any purpose until it shall have been authenticated by the certification hereon indorsed by the Trustee under said mortgage or deed of trust." The bond also bore the following: " Trustee's certificate. This bond is one of a series of bonds described in the within-mentioned mortgage, or deed of trust.

"J. A. P. GLORE,
 " Trustee."

The signatures of Donnelly and Polk were written by the defendant in simulation of their handwriting and he claims authority therefor under the powers of attorney heretofore alluded to. The bond upon its face states that it shall not become obligatory for any purpose until it shall have been authenticated by the certification thereon indorsed by the trustee. A *facsimile* of the signature of the trustee was put upon the certificate by the defendant by means of a rubber stamp which he had had made.

Glore, the trustee, testified that he never signed an orange-colored bond; that he never told the defendant that he might have a rubber stamp made with the name J. A. P. Glore on it, nor that he might stamp that name on any of the orange-colored bonds; that he never authorized him, either directly or indirectly, to sign these bonds; that he was not trustee of any other bonds than the brown bonds, based upon the $300,000 mortgage upon land in Wisconsin; that he never heard of any other mortgage and that he did not know anything about orange bonds at all.

The judgment of conviction depends upon the finding of fact by the jury that the signature of Glore, the trustee, was put upon that bond without authority, and that, therefore, the bond was a forged bond, purporting to be that which it was not. Such finding is amply supported by the evidence. The proof sustains conviction upon the ground that defendant uttered the forged bond. He loaned ten of the orange bonds to Dresser to use as collateral and received a money payment and a promissory note for such use. The defendant testified that the bonds were lent under a trust receipt to be returned in four days and if not so returned Dresser was to pay $500 for time use for four months. Dresser deposited them as collateral for a loan obtained by him. The defendant took the stand in his own behalf, and while he testified that he had authority from Glore

to make the rubber stamp and to affix his signature thereby to these bonds, his testimony was such that the jury would have been authorized to reject every word he said.

Papers were put in evidence which had been received from him which stated that "the property covered by the mortgage comprised of sixty thousand acres of land in the State of Wisconsin and other extensive holdings in the State of Missouri, Michigan, Kentucky, Tennessee, Virginia, Georgia; also in the Province of New Brunswick, and 40,000 acres just purchased in the Republic of Mexico. These properties are held in fee simple and have no prior liens or debts other than the mortgage securing the company's bonds. . . . The stock was issued and held at par and none has ever been sold at less. Dividends of 5% were paid in 1905, and 7% in 1906 and 1907, and the interest on the bonds has been met promptly. A sinking fund of $10,800 has been set aside five years in advance of the time called for in the mortgage. There is no floating indebtedness whatever, the company's purchases being strictly for cash. The bonds never sold below 88% or the stock below par." He also put out a condensed and comprehensive report of the company for the years 1906-1907 and 1908, from which, under various items, it appeared that for 1906 the income of the company was $99,208; for 1907, $130,919, and for 1908, $620,-100. And in the statement of expenditures, that for each of the three years, interest on bonds, $300,000, five per cent. was paid, $15,000, and that on dividends on stock of five and seven per cent., there had been paid $25,000 in 1906, and $35,000 in each of the other two years; that for a sinking fund, not required until 1912, $10,800 had been laid away in 1907, and $15,00 in 1908, resulting in a surplus or profit of $11,585 in 1906, $22,033 in 1907, and $319,100 in 1908, and yet he testified that he was ", the whole thing there when all these bonds were signed;" and the company had no funds except what Mr.

Dunton furnished; that Polk was secretary and treasurer up to 1906, but that he never handled a dollar; that they had no books; that "they had no funds, they wasn't doing any business," and that none of the stock was issued until 1907.

There was no evidence that the company had good title to a foot of land anywhere. The situation suggested by the evidence presents a novel form of financial enterprise. A man with a few dummies organizes a corporation, procures the printing of an issue of bonds, and then loans those bonds to others for a price, to be used by them as collateral security to procure loans of money, and, having been obliged to deposit two-thirds of the issue to borrow the money necessary to pay for the printing of the bonds, forges another set to be used for the same purpose.

We have examined this case with interest because of its novelty, and with care to see whether any rights of the defendant had been violated. Upon the first trial the indictment was amended. It should be recalled that the bond had been physically pasted upon the indictment and a transfer by attorney had been thereby covered up. The presiding judge upon the first trial directed an amendment by writing into the indictment this covered up indorsement of transfer by attorney, and upon the trial at bar there was a motion made to strike out this amendment. The trial court very properly declined to grant the motion, and it is quite evident that he had no power to strike out an amendment granted by another judge. But if the granting of the amendment were properly before us, we should say, *first,* that it was entirely proper, because it was the mere bringing into sight what was on the bond, the subject of the indictment, which had happened to be physically covered up by pasting it on. In the *second* place, that no possible harm could come to the defendant because this amendment was entirely immaterial to the cause of action. The forgery here complained of, and of which the defendant has been found guilty, was that

of the trustee's signature, and had nothing whatever to do with the said transfer.

It is claimed that there is defect in that the indictment alleges the incorporation of the company under the laws of the United States and that the certificate of incorporation shows an incorportation under the laws of the District of Columbia. The objection is frivolous. The laws governing the District of Columbia are made by the Congress of the United States and, of course, are the laws of the United States, and upon the face of the indictment the bond which the defendant was accused of having forged bore upon its face "a corporation created and existing pursuant to authority granted by acts of the United States of America for the District of Columbia, approved March the 3d, 1901, and June 30th, 1902."

We think the crime charged was fully made out; that the only contradiction came from the defendant himself, and that only as to whether or not he had authority from Glore to attach his name to the bond in question, and that the credibility of the defendant's evidence was entirely for the jury, and his conflicting, improbable and, in many instances, false statements clearly authorized a complete rejection of his denials. We think that the defendant had a fair trial and was properly convicted of the crime whereof he stood charged.

It follows, therefore, that the judgment appealed from should be affirmed.

INGRAHAM, P. J., McLAUGHLIN, SCOTT and DOWLING, JJ., concurred.

Judgment and order affirmed.

## NOTE ON FORGERY.

**GENERALLY.**

Where false pretence is written instrument, resulting crime is sometimes forgery or the uttering thereof, and sometimes obtaining property by false pretences. If instrument used is false in itself and is one which, if genuine, would create some liability or right, obtaining property on the faith thereof is forgery or the uttering of a forged instrument, as the case may be. People v. Peacock, 6 Cow. 72.

Forging a paper in the following words: "Mr. Seward, Sir—Let the bearer trade $13.25, and you will oblige." etc., was held to be forging an order for the delivery of goods within the statute. People v. Shaw, 5 Johnson, 236.

Forging the following papers, "Due Jacob Finch $1.00 on settlement this day," is forging a note for the payment of money within this statute. People v. Finch, 5 Johnson, 237.

Uttering and publishing of a promissory note with forged endorsements upon it is an offense within the statute against forgery, although the passing of the note is accompanied with communications which would exonerate the endorsers if the endorsements were general; if by possibility the endorsers may be injured, the crime is perpetrated. People v. Rathbun, 21 Wend. 509.

The making of a counterfeit order for the delivery of property in the name of a third person is forgery under our statute though the paper be not addressed to anyone. Noakes v. People, 25 N. Y. 380.

A county officer who, without authority, has executed in his own name, as the official representative of the county, an instrument purporting in its body to be the contract or obligation of the county, cannot be convicted of forgery. People v. Mann, 75 N. Y. 484.

Provisions of Penal Code 521 have no application to a writing the signature to which is genuine and no change in which is shown to have been made after its execution, though it appears that it was executed by the party signing it under a mistake or in ignorance of its contents, induced by fraud or deceit on the part of the defendant. People v. Underhill, 142 N. Y. 38.

Making and engraving of unfinished plate for bank-note held an offense before any note actually engraved therefrom. People v. D'Argencour, 2 N. Y. Crim. 267.

Forging any instrument or writing which, as appears on its face, would have been void if genuine, is not an indictable offense. Fadner v. People, 2 N. Y. Crim. 553.

Where defendant, indicted for having in possession forged coupon, with intent to utter, same being attached to forged bond, sealed but not signed, and defendant testified that same was placed in his custody to be returned to another person, who had placed it with him on demand, held that such custody, with intent to return, even with knowledge of forgery, did not constitute offense charged. People v. Martin, 3 N. Y. Crim. 122.

Where statute of foreign State prescribed form of signature of bond, after designating persons who were to sign same, and such form was clearly an error in designating wrong officer, forging signature of correct officer held to be indictable. People v. Brie, 5 N. Y. Crim. 266.

One who is authorized to fill out checks signed in blank "for his own purposes and whenever he needed money," is not guilty of forgery, even if he fills up such checks with fraudulent intent and absconds from the country. People v. Reinitz, 7 N. Y. Crim. 71.

If a person, not a member of a firm, is authorized to draw the firm checks, an abuse of that authority will not constitute forgery. People v. Wiman, 9 N. Y. Crim. 490.

Where cashier is intrusted with blank signed checks to be used for certain specified purposes only, and fills same in to his own order without authority, he is guilty of forgery. People v. Dickie, 10 N. Y. Crim. 123.

No intent to defraud necessary to constitute crime in making false certificate with regard to proof or acknowledgment of an instrument which by law must be recorded. People v. Hayes, 10 N. Y. Crim. 476.

President of corporation held not guilty of forgery who issues check in violation of parol agreement. People v. Mershon, 14 N. Y. Crim. 286.

Making of false certificate by former town clerk as to person entitled to bounty, after term of office had expired, held to be forgery. People v. Filkin, 17 N. Y. Crim. 348.

A person who, knowing that the indorsement of the payee of a check has been forged, deposits the same in his private bank account for collection is guilty of forgery in the second degree. People v. Mingey, 21 N. Y. Crim. 107.

Making of false entries in books of insurance company, when does not constitute the crime of forgery. People v. Hegeman, 21 N. Y. Crim. 535.

Although an insurance company, for the purpose of deceiving the State Insurance Department, transferred its secured loans to its bankers just prior to the date of its annual report,. and immediately after making such annual report repurchased the loans, an officer who entered such transactions in the company's books is not guilty of forgery under sections of Penal Code relating to false entries in books of account. People v. Corrigan (No. 2), 23 N. Y. Crim. 67.

Defendant, an attorney at law, convicted of crime of forgery in first degree, in signing and uttering an instrument satisfying a mortgage, and purporting ·to be executed and acknowledged by his client. It appeared that the defendant collected the sum due on the mortgage and converted it to his own use, the only ground of defense being that the client had given the defendant a power of attorney authorizing him to deal with certain property coming to her from an estate. On all the evidence, held, that the judgment of conviction should be affirmed. People v. Shanley, 23 N. Y. Crim. 484.

**INDICTMENT.**

In an indictment for forging and uttering a check it is not necessary to set forth endorsements appearing upon the check or a revenue stamp thereon, as neither form part of the check, which is a complete instrument of itself, and such omission therefore does not constitute a variance. Miller v. People, 52 N. Y. 304.

Need not aver that the paper is in the words of the statute "an order for the payment of money or any instrument by which a pecuniary demand is created." People v. Clements, 26 N. Y. 193.

An indictment for forgery in the second degree, which in a single count alleges that the defendant forged an endorsement on a bank check, with the intent to defraud a person named, and offered the same to such person in payment for goods purchased, is not open to the objection that it charges two distinct crimes. People v. Altman, 147 N. Y. 473.

If paper set forth in indictment does not, either upon its face or by the averment of extrinsic facts, affirmatively appear to be an instrument which, if genuine, would be operative, the indictment is bad, as failing to ·state facts sufficient to constitute a crime. People v. Savage, 5 N. Y. Crim. 541.

If paper set forth, of which forgery is predicated does not, either upon its face or by the averment of extrinsic facts, affirmatively appear to. People v. Drayton, 15 N. Y. Crim. 1. See Savage.

23

Held good where tenor of forged instrument given, though words " in substance " inserted therein.  People v. Hertz, 15 N. Y. Crim. 477.

Held to sufficiently charge crime.  Matter of Van Orden, 15 N. Y. Crim. 587.

Where person in possession of paper containing genuine signature fraudulently writes note over same, indictment charging same sufficiently charges crime.  People v. Drayton, 14 N. Y. Crim. 141, (affirmed) 16 N. Y. Crim. 1.

### EVIDENCE.

On a charge of uttering and publishing a promissory note with the names of several persons upon it as endorsers, all of which endorsements are alleged to be forged, it is not necessary for the purpose of sustaining the nidictment to prove all the endorsements to be forgeries.  It is enough that one or more are shown to be forgeries.  People v. Rathbun, 21 Wend. 509.

Sufficient to prove that the words of certification were false and that no person of the name signed to the certificate was connected with the bank without showing that the signature of the drawers was a forgery, on trial of indictment for uttering a counterfeit bank check purporting to have been certified at the bank.  People v. Clements, 26 N. Y. 193.

Material error to admit, as bearing upon the question of intent, other similar checks found upon the person of the defendant with the forged check counted upon, without proof that they were also forgeries.  People v. Altman, 147 N. Y. 473.

Question whether appellant was principal partly or merely an accessory held to be one for the jury and properly submitted thereto, and that it would have been error to withhold same from jury on the ground of coverture or coercion.  People v. Ryland, 1 N. Y. Crim. 123.

Incorporation of bank whose notes are forged need not be proved by direct evidence, general evidence being sufficient.  People v. D'Argencour, 2 N. Y. Crim. 267.

Evidence considered and held sufficient for consideration of jury, and that defendant's knowledge of forged character of instrument could be inferred from what transpired at time of passage thereof and her subsequent conduct.  People v. Elmore, 3 N. Y. Crim. 264.

Competent to prove the guilty knowledge and intent of defendant by showing that he has committed other forgeries, and such evidence can be

considered by the jury for that purpose only. People v. Everhardt, 6 N. Y. Crim. 231.

Error to exclude evidence on behalf of defendant that witness had heard conversation between defendant and husband where latter authorized defendant to sign his wife's name, where husband had contradicted testimony of defendant to the effect that such authority had been given latter by the husband. People v. Loew, 8 N. Y. Crim 370.

Not error to admit evidence that after payment of note, witness visited locality where alleged maker and endorser were stated by defendant to have lived and owned real estate, and looked over assessment-roll and found no such names. People v. Jones, 8 N. Y. Crim. 400.

To sustain conviction it must appear that writing was forged, or was altered after execution. People v. Underhill, 9 N. Y. Crim 172.

Where railroad tickets claimed to be forgeries were proved and marked for identification and shown to jury, held that it would be improper to reverse on the ground that they were not technically offered in evidence. People v. Blase, 15 N. Y. Crim. 371.

Where, on trial for forging endorsement, the defense is that while she wrote the endorser's name upon the note without his express authority, she thought, from prior transactions with him, that she had the right to do so, and that she had no guilty intent in signing his name, a prior note purporting to have been executed by the defendant as maker, upon which she wrote the name of the same endorser, which he testified had not been endorsed by him, and to which he never authorized her to sign his name, is competent evidence to show scienter. People v. Weaver, 18 N. Y. Crim. 171.

Where only issue upon trial is whether defendant knew that the note was forged at the time that he indorsed it, and had the amount thereof credited upon his bank account, evidence of the endorsement and uttering of other forgeries held competent. People v. Dolan, 20 N. Y. Crim. 378.

When defendant convicted of the crime of attempting to utter a forged instrument, by trying to secure a loan upon forged certificates of stock, and the only evidence that the certificates were forged and that the defendant knew the fact is the testimony of an accomplice, which is in no way corroborated, a conviction cannot be sustained. People v. Colmey, 20 N. Y. Crim. 424.

Not necessary that prosecution show that defendant himself committed

the larceny concealed by the false entry, in a trial for forgery in the third degree.   People v. Curtis, 21 N. Y. Crim. 134.

See note on evidence of other crimes on trial for forgery.   20 N. Y. Crim. 390.

### TRIAL.

In respect to misdemeanors where a part of the offense is committed in one county and part in another, the rule of law in respect to venue is otherwise; then the trial may be had in either county.   People v. Rathbun, 21 Wend. 509.

Conviction on indictment for uttering forged bond is a bar to a subsequent conviction under an indictment charging the uttering at the same time of the mortgage accompanying said bond, and purporting to secure the performance of its conditions.   People v. Peck, 4 N. Y. Crim. 148.

Error to refuse to charge that if jury believed husband directed defendant to sign check in the name of his wife, and latter in good faith believed he had authority, they should find defendant not guilty.   People v. Loew, 8 N. Y. Crim. 370.

Upon trial for forging indorsement, criminal intent in making same is a relevant issue, properly determinable only by the jury.   People v. Wiman, 9 N. Y. Crim. 304.

Where defendants counsel continues to draw out improper evidence after being advised by court to the contrary, and said that he knew that it was incompetent, but wanted it, as he did not want the minds of the jury to be prejudiced with regard to it, it is not error for the court to afterwards refuse to strike it out.   People v. Blase, 15 N. Y. Crim. 371.

Held no error to charge as stated in this case.   People v. Weaver, 17 N. Y. Crim. 291.

### DEFENSE.

The contention that the instrument does not constitute a forgery because the defendant signed it with his own name, held untenable, as the defendant had made the certificate effective by signing his name in an official capacity which he did not possess.   People v. Filkin, 83 App. Div. 589.

Defendant's belief that person whose name she endorsed would ratify and sanction her act does not constitute a defense unless based upon facts

and circumstances which would warrant her in such expectation. People v. Weaver, 17 N. Y. Crim. 291.

Belief that wrongful act would be ratified held immaterial, where the question to be submitted to the jury is as to whether the defendant had, or believed in good faith that she had, authority to place the endorser's name upon the note. People v. Weaver. 18 N. Y. Crim. 171.