# Duvall and Pelham *v*. The State.

### *Indictment for Grand Larceny.*

1. *Proof of value of United States treasury-notes.*—The commercial value of United States treasury-notes, commonly called "greenbacks," is, as matter of law, what their face imports; consequently, under an indictment for the larceny of such a note, a conviction may be had without any proof of its value except what it purports on its face to be.

2. *Same; charge requiring explanation.*—Hence, also, a charge instructing the jury that, "if the evidence fails to show the value of the property alleged to have been stolen, they must acquit," although it asserts a correct general proposition, was properly refused in this case, since, without explanation, it would probably have misled the jury, in inducing the belief that extraneous evidence of the value of the stolen note was necessary.

3. *Sufficiency of indictment, in averring facts as unknown to grand jury.*—Under an indictment which charges the larceny of "sundry United States treasury-notes, or national-bank bills, the number and denomination of which are to the grand jury unknown, of the aggregate value of forty dollars," a conviction can not be had, if the evidence adduced on the trial shows that the number and denomination of the stolen bills were in fact known to the grand jury; but, if they were in fact unknown, though by reasonable diligence and inquiry they might have been ascertained, the averment is sufficient, and a conviction may be had.

FROM the City Court of Montgomery.
Tried before the Hon. JOHN A. MINNIS.

The indictment in this case contained but a single count, which charged that the defendants, Frank Duvall and Charles Pelham, "feloniously took and carried away sundry United States treasury-notes, or national-bank bills, the number and denomination of which are to the grand jury unknown, of the aggregate value of forty dollars, and the personal property of Isaiah Bozeman." "The case was tried," as the bill of exceptions states, "on the plea of not guilty; and Isaiah Bozeman, a colored man, was examined as a witness for the State, and testified as follows: On the — day of November, 1879, during the time of holding the 'State Fair' in the city

of Montgomery, about ten o'clock in the morning, he gave one Dick Adams forty-nine dollars in silver, and one dollar in paper money, and got said Adams to go with him to the bank, and have said money changed into two twenty-dollar bills and one ten-dollar bill. Said money was all that witness had. Adams, having got the money changed, as above stated, gave the bills to witness. Said twenty-dollar bills were 'greenbacks.' Frank Duvall, one of the defendants, who was a colored man, was standing near by, and saw said Adams hand the money to witness. This occurred on Commerce street, in the city of Montgomery, near the Belshaw corner. Witness lived near the corporate limits of the city of Montgomery, in a westerly direction from said corner. Witness had seen said Duvall before, but had no personal acquaintance with him. Witness started to go home, when said Duvall proposed to accompany him a part of the way; and they thereupon went up Montgomery street together, until they reached the foot of the Westcott hill. On the way, Duvall exhibited to witness several cards, which he told witness were 'tricks' that would prevent 'sharp niggers' from getting his money, in the event he should attend the 'Fair' during the week. Witness and Duvall went into a 'cut,' or cross street, for the purpose of examining said cards, when a neatly dressed colored man, whom witness had never seen before, but whom he identified on the trial as Charles Pelham, one of the defendants, came up where they were standing, and inquired the nearest way to Hayneville. Witness replied, 'You are on the right road now;' whereupon said Pelham asked him if he could change a fifty-dollar bill. Witness answered, 'Yes,' and took his money out of his pocket for that purpose, when another colored man, whom witness identified as one William Lawrence (not indicted), suddenly came up on them, and exclaimed, 'I arrest you all for gambling.' Charles Pelham instantly snatched the two twenty-dollar bills from the hand of witness, and fled in one direction, and Duvall in another. Witness and said Lawrence walked together to the top of the hill, and separated. Witness testified that he could not possibly be mistaken as to the personal identity of each of the defendants, or of said Lawrence. Witness further testified, on cross-examination, that he appeared before the grand jury who found the indictment in this case, and testified before them just what he had testified on the trial. Defendants' counsel asked him, if he had testified before the grand jury that he had two twenty-dollar bills, known as 'greenbacks,' and one ten-dollar bill; to which he answered, that he did so state to the grand jury. Thereupon, defendants' counsel sug-

gested to the court, that there was a variance between the allegations of the indictment and the proof, as to the denomination and description of the property alleged to have been stolen; and moved that the trial be arrested, and that a verdict be entered for each of the defendants on this indictment; which suggestion and motion the court overruled, and each of the defendants duly excepted. Defendants' counsel then asked said witness, if he had not had said Lawrence arrested before the mayor of Montgomery, on a charge of having stolen said money; to which witness answered, that he had. Defendants' counsel then asked him, if he had not testified, on said trial before the mayor, that he could not be mistaken as to the personal identity of said Lawrence, and that he was one of the parties who participated in the larceny of his money; to which he answered, that, according to his best recollection, said Lawrence was not tried before the mayor, but was discharged without a trial, and that he had no recollection of having so testified.

"Polly Thomas, a colored woman, was next examined as a witness for the State, and testified, substantially, that she was at work washing clothes, in a yard, surrounded by a high plank fence, near said 'cut,' or cross street, and saw the defendants engaged in conversation with said Isaiah Bozeman; that she saw only two men besides said Bozeman, who, according to the best of her knowledge and belief, were the defendants, but she did not see either of them run; that one of them, whom she took to be Duvall, walked leisurely down the 'cut,' and the other, whom she took to be said Pelham, accompanied Bozeman to the top of the hill.

"The State having here rested, the defendants then introduced William Lawrence as a witness, who testified that, on the day said larceny was alleged to have been committed, he was working for Col. Holcombe, on his plantation, and had not been in Montgomery county for several days before that day, and was not in the city or county of Montgomery during the week of the 'Fair;' that he knew nothing of the alleged larceny, and had no participation therein; that he was arrested, at the instance of said Bozeman, before the mayor of Montgomery, on a charge of having part_____ted in said alleged larceny, but, on trial before s_____r, was discharged, on proof that he was at wo_____l. Holcombe's plantation, in Lowndes county. _____ts' counsel then asked said witness, if said Bozeman did not testify, before said mayor, that he could not be mistaken as to the personal identity of said Lawrence, and that he was one of the persons who participated in said alleged larceny; and the witness answered, that Bozeman swore on said trial that he did

not think he could be mistaken, that Lawrence was one of the men who participated in said alleged larceny. The defendants introduced several other witnesses, also, whose testimony tended to prove an *alibi* for each of said defendants.

"This was all the evidence, and the court having charged the jury orally, the defendants asked the following charges, which were in writing :

"1. There can be no larceny of anything without value ; and if the evidence in this case fails to show the value of the property alleged to have been stolen, the jury must acquit the defendants.

"2. Evidence that the property alleged to have been stolen was two twenty-dollar 'greenbacks,' is not evidence that they were of the value of forty dollars, or of any value.

"3. Evidence that the property alleged to have been stolen was two twenty-dollar bills, and that they were 'greenbacks,' does not show that they were of any value, or worth forty dollars.

"4. Evidence that the property alleged to have been stolen consisted of two twenty-dollar bills, is not evidence that their value was forty dollars, or that they were of any value.

"5. If the jury are satisfied, from the evidence, that a description of the money, the subject of the alleged larceny, was known to the grand jury at the time they found the indictment in this case, or that by reasonable diligence and inquiry they could at such time have ascertained the same, then they must find the defendant not guilty.

"The court refused each of these charges, and the defendants excepted to the refusal of each."

J. GINDRAT WINTER, for the defendants.

H. C. TOMPKINS, Attorney-General, for the State.

STONE, J.—Charges 2, 3, and 4, asked by defendants and refused by the court, all raise the same question. The testimony tended to show that two twenty-dollar bills, treasury-notes of the United States, were stolen from Isaiah Bozeman. There was no independent testimony that these notes had any value. The proposition of these charges is, that evidence that the property stolen consisted of two twenty-dollar bills, known as "greenbacks," does not show they were of any value. The term "greenbacks," as a designation of United States treasury-notes, has grown into such general use, that neither courts nor juries can be supposed to be ignorant of the meaning it conveys. We think the jury were authorized to infer and find from this expression

that the witness intended to say, and did in effect say, that the property stolen from him was two ·United States treasury-notes, each of the denomination of twenty dollars. It is matter of law that the commercial value of United States treasury-notes is what their face imports. Hence, there was enough before the jury to authorize them to find the value of the treasury-notes, or "greenbacks," and the City Court did .not err in refusing to give these charges. *Sallie v. The State*, 39 Ala. 691; *Corbett v. The State*, 31 Ala. 329; *Grant v. The State*, 55 Ala. 201.

2. Charges to the jury should be given, and must be construed, in reference to the evidence in the cause.—*Hammett v. Brown*, 60 Ala. 499. "Instructions .may be correct, when read in the light of the particular facts, which would be erroneous under a different state of facts."—*Ib.; Judge v. The State*, 58 Ala. 407; *Thrash v. Bennett*, 57 Ala. 156. As a general rule, charge No. 1, asked in this case, asserts a correct legal proposition. There can be no larceny of anything without value. But, when viewed in connection with the evidence in this cause, we think the charge, if given as asked, would probably have misled the jury. We have shown the description of the property alleged to have been stolen, as "two twenty-dollar bills, known as greenbacks," furnished evidence from which the jury might find the value. This·evidence was before the jury. If the court had instructed them, in the language of the request, that "if the evidence in this case fails to show the value of the property alleged to have been stolen, the jury must. acquit," we think they would have understood the court as meaning and intending that there must be other evidence of value, beyond what is implied in the language, "two twenty-dollar bills, known as greenbacks." There was no error in refusing this charge.

3. A graver question arises on the 5th charge asked. The indictment charged, that the defendants "feloniously took and carried away sundry United States treasury-notes, or national-bank bills, the number and denomination of which are to the grand jury unknown, of the aggregate value of forty dollars, the personal property of Isaiah Bozeman." Isaiah Bozeman was examined as a witness; and he testified, that he had in his possession, and in his hand, two twenty-dollar bills, called "greenbacks," and he also had in his possession one ten-dollar bill. He had no other money. He further testified, that Pelham, one of the defendants, snatched the two twenty-dollar bills from his hand, and fled. This witness, on cross-examination, testified that, in his examination before the grand jury, he had stated the same thing he

here testified—namely, that he had two twenty-dollar bills, known as greenbacks, and one ten-dollar bill. The fifth charge asked and refused is in the following language : "If the jury are satisfied from the evidence that a description of the money, the subject of the alleged larceny, was known to the grand jury at the time they found the indictment in this cause, or that by reasonable diligence and inquiry they could, at such time, have ascertained the same, then they must find the defendants not guilty." What is the meaning, the proper interpretation, of the words, 'number' and 'denomination?' If the word had been numbers, in the plural, we would be inclined to hold it referred to the serial numbers on the bills. Being in the singular number, it must be construed as expressing or relating to the number of bills alleged to have been stolen ; not the numbers on the bills. The word denomination explains itself. It refers to the value or number of dollars the several bills represented ; as, the denomination of five dollars, the denomination of ten dollars, &c. The grand jury then affirmed, by their indictment, that they did not know the number of bills stolen, nor their denominational value ; that is, that the testimony before them did not satisfy their minds on these subjects. We are not informed what other testimony was or was not before that body, bearing on these questions, nor of the degree of intelligence or clearness with which the witness Bozeman gave his testimony. He may have been a very ignorant witness, and the minds of the grand jury may have been left in doubt on these questions ; or the testimony of other witnesses may have created doubts. It is within knowledge that the term 'greenbacks' is sometimes employed to denote national-bank bills, as well as United States treasury-notes. They are of convertible value, in ordinary commercial transactions, and, unless some special circumstance had fixed attention, the average man would not be able to affirm, with reliable certainty, to which species of circulating medium a bill or bills he had owned, and had passed off, or lost, belonged. So, we repeat, the grand jury, even if Bozeman testified as he said he had done before them, may have had doubts of the number and denomination of the bills.

At the common law, a fact not known to the grand jury, and which could not be learned by the exercise of reasonable diligence, might be charged as "to the grand jury unknown," unless such fact was an ingredient of the offense sought to be prosecuted. This was a rule of necessity, to prevent a failure of justice ; and when the necessity did not exist, the rule did not obtain. Hence, when the fact was known to the grand jury, or could have been learned by the

employment of reasonable diligence, a conviction was not allowed to be had on an indictment so framed. Courts, in such cases, directed an acquittal, on an indictment so framed. 1 Chit. Cr. Law, 212-213; *Regina v. Stroud*, 2 Moody, 270; *Regina v. Campbell*, 3 Carrington & Kir. 82; *Rex v. Walker*, 3 Camp. 264. But the prisoner was not discharged; he was held for a new indictment, to be preferred in proper form, and according to the facts.—1 Chit. Cr. Law, 213. The same doctrine has been frequently asserted on this side of the Atlantic; some of the cases going so far as to hold that, when a particular fact or name is charged to be to the grand jury unknown, this averred want of knowledge, like any other material averment in the indictment, must be proved, or there can be no conviction.—*Blodget v. The State*, 3 Porter, Ind. 403; *Brooster v. The State*, 15 Ind. 190; *Com. v. Hendrie*, 2 Gray, 503; 1 Bish. Cr. Proc. §§ 549, 551, 553.

In *Com. v. Tompson*, 2 Cush. 551, the defendant was indicted for adultery, in two counts. The first count charged that the adultery was committed with Esther Bradford; and the second, " with a woman whose name was not known." On the trial, there was evidence tending to show that the the person, with whom the alleged offense was supposed to have been committed, was known, and that her name was Esther Bradford. On this evidence, the jury were instructed that, " if they doubted whether the true name of the woman was Esther Bradford, they might find the defendant guilty on the second count, if the other necessary facts were proved." The jury found the defendant not guilty on the first count, and guilty on the second count. The court, SHAW, C. J., said : " The instruction of the court, to which exception was taken, appears to us to be correct, as we understand the direction. It was intended, we suppose, to say, that if the evidence was insufficient to establish the fact affirmatively, to the satisfaction of their minds, that the woman's name was Esther Bradford, they could not so find that fact; and as there was no other evidence tending to prove what her name was, the jury would be warranted in finding, that if the act was done at all, it was with a woman whose name, not being proved by any legal and sufficient evidence, was not known to them, and was, therefore, unknown." The practice of varying the averments in two or more counts, pursued by the pleader in this case, might, in cases of doubt or unsatisfactory testimony, be followed with profit, in all similar cases. One rule is clearly declared in all the cases : that when a fact or name is known or proved to the grand jury, there is no warrant in the law for averring such fact or name as unknown. Such form of averment may be supposed to give greater latitude

of proof; but, when it appears on the trial that the fact or name was known, a conviction on such indictment should not be allowed.

In New York and Missouri, the rule seems to be as follows: when the averment in the indictment is that a name or fact is unknown, such indictment will support a conviction, unless it be shown that such name or fact was *known* to the grand jury. It is not enough that the name or fact is proved, and, therefore, made known to the petit jury, or that, by proper diligence, the grand jury could have learned the true name or fact. It is a question of variance between the averments and the proof; and hence the proper inquiry is not whether that important arm of the law's administration employed due diligence. It was part of their sworn duty to " diligently inquire and true presentment make." The law presumes sworn officials do their duty. The inquiry is, did they falsely affirm the name or fact was unknown, when it was known?—*White v. The People*, 32 N. Y. 465; *Noakes v. The People*, 25 N. Y. 380; *Hays v. The State*, 13 Mo. 246. We think this much the better rule, and that it secures to persons charged with violations of the criminal law all that is practicable, in stating the "nature and cause of the accusation."—Declaration of Rights, section 7; Code of 1876, §§ 4786, 4789, 4790; *Morningstar v. The State*, 52 Ala. 405. See, also, *Sparrenberger v. The State*, 53 Ala. 481; *Washington v. The State*, at the present term.' Charge number 5 was rightly refused, because it asked too much. It claimed an acquittal, not only if the grand jury knew the description of the money, the subject of the alleged larceny, at the time they found the bill, but also, if " by reasonable diligence and inquiry they could have ascertained the same."

There is no error in the record, and the judgment of the City Court is affirmed.