59 So.2d 676

### MILES v. STATE.
### 4 Div. 679.

Supreme Court of Alabama.
May 15, 1952.

Rehearing Denied June 26, 1952.

Allen Cook, Andalusia, and Lightfoot, & Bricken, Luverne, for appellant.

Si Garrett, Atty. Gen., and M. Roland Nachman, Jr., Atty. Gen., and Wm. H. Sanders, Montgomery, of counsel, for the State.

BROWN, Justice.

The appellant was duly indicted by a grand jury impaneled in and by the Circuit Court of Covington County for murder in the first degree, the indictment averring in the first count that, "before the finding of this indictment, Deasmon Miles alias Desmond Miles alias D. M. Miles, whose name is to the grand jury otherwise unknown, unlawfully and with malice aforethought, killed Javes Alton Hill by shooting him with a gun * * * against the peace and dignity of the State of Alabama."

Counts 2, 3 and 4, omitted in this statement, averred that the instrument used in causing death was "by striking him with a stick" in some manner which "is to the grand jury unknown" or by "shooting him with a gun" and count 5 charged that "John Doe, whose name is to the grand jury otherwise unknown killed an adult human being" etc. Code 1940, Tit. 15, § 241; Duvall v. State, 63 Ala. 12, 18.

The defendant on arraignment interposed the pleas of not guilty and not guilty by reason of insanity. On his trial he was convicted of murder in the first degree and the jury fixed his punishment at death.

There was no evidence showing that the facts alleged to be "unknown" to the grand jury were known to the grand jury and the cause is not within the rule stated in Duvall v. State, supra.

The evidence goes to show that appellant, Desmond Miles, and the deceased, Alton Hill, left Roberta, Georgia, on April 6, 1951, to go on a fishing trip. Traveling in Hill's automobile, they arrived in Covington, County, Alabama, sometime after midnight. Both had been drinking and were somewhat intoxicated, as was disclosed by the admission of the defendant and the testimony of the operator of a filling station in Opp, Alabama, where they stopped and created a disturbance.

After a brief stop at the house of defendant's sister, defendant and deceased drove on with the intention of visiting some girls. Near Rawls School House in Covington County they stopped the car and stepped out on the road. They took drinks from a bottle of whiskey and soon were engaged in an argument. The dispute began when defendant did not drink copiously enough to satisfy deceased, who kept urging him to take more. Other matters were brought into the dispute and deceased cursed defendant and, according to defendant's testimony, reached for a pistol which

he carried in his pocket. Defendant testified that he shoved deceased away and ran around to the opposite side of the automobile. Defendant and deceased then dodged back and forth on opposite sides of the automobile while deceased fired three shots from his pistol.

Defendant was able to climb up on a small bank or elevation; deceased thereupon began walking in the other direction but shortly stumbled and fell. Defendant seized upon this opportunity to get in the car with the idea of driving it away. He was unable to get the car started, however, and got out again, taking with him a loaded shotgun which was lying on the rear seat. Standing on an elevated spot on the same side of the automobile where he had formerly been, defendant aimed the shotgun over the hood of the automobile at the bulk of deceased as the latter stood in the dark. Defendant testified that he did not know whether deceased was facing toward him or away from him when the shot was fired. The killing was, of course, witnessed by no other person and the above details are taken solely from the defendant's testimony.

After an interval during which the defendant drank more whiskey, he then picked up the body of the deceased and put it in the back of the automobile. Apparently deciding that the back of the automobile was too conspicuous a place, he carefully removed the body to the trunk of the automobile. Defendant was unable to carry the body and had to drag it, but his testimony does not disclose that the head of the body received any severe blow at any time. Defendant left the body lying on the side of the road on a rise sloping from the road.

Defendant then drove a few miles to Gantt, Alabama, where he picked up the witness Sumlin. By this time it was daylight. They drove to Elba, Alabama, and had a wreck near the latter town. Defendant apparently returned to the home of his sister and was arrested some days later when the disappearance of Hill was reported. Defendant at first denied there had been any killing and told rather conflicting stories to explain the presence of blood on the rear seat of the Hill automobile. Finally, on May 26, 1951, defendant told the officers that he would lead them to the body and took them to the place above described.

When found, the body was badly decomposed and had been mutilated and partially consumed by vultures. The body was lying on an incline with the shoulders pointing downward. The skull had become detached from the body and was found at the bottom of the slope, some seventy or eighty feet below the body.

The body was later examined by W. L. Sowell, Associate Toxicologist in the State Department of Toxicology. This witness testified that he performed an autopsy on the body. He stated that the skin on the upper part of the body was intact and that in the back there was a round wound near the spinal column. Lead shot was found in the wound. The skull was found to be fractured in three places. The witness testified that in his opinion death resulted from the wound in the back. Photographs of the body and skull were introduced into evidence. After the defendant had led the officers to the body and they had returned to the jail, the defendant made a voluntary confession in which he admitted the killing. This was introduced in evidence. Nothing appeared in this confession in its written form about the position of deceased when defendant shot him. That is, whether he was facing towards defendant or away from him. Nor was anything said therein about the deceased having shot at the defendant with a pistol, as defendant testified did in fact happen.

The sheriff testified that the defendant did relate these matters when he made the oral confession and that he commented on their absence in the typed document, which purported to be a resume of his narrative. He was informed that he could bring up such details at the trial and that he need not sign the confession as written unless he desired to do so.

Defendant took the stand and admitted firing the fatal shot but claimed that he did so in self-defense. In support of the plea

of not guilty by reason of insanity, defendant offered the testimony of several witnesses, who testified that defendant was of unsound mind. Defendant also testified that during the trip from Georgia to the scene of the killing he had been taking numbutal tablets to relieve his asthma and that before he left Georgia a doctor had given him a narcotic to relieve the pain of a broken hand.

At the conclusion of the evidence the defendant made a motion to exclude all the evidence on the basis of his contention that his detailed account of the incidents leading up to the killing made a clear case of self-defense, shifting the burden to the state to show that the defendant was not free from fault in bringing on the difficulty. Randolph v. State, 100 Ala. 139, 14 So. 792; Langham v. State. 243 Ala. 564, page 571, par. 10, 11 So.2d 131.

The defendant also requested the affirmative charged in writing directing his acquittal.

The defendant also insisted in briefs that the state failed to offer expert testimony that the fractures in the cranium of the deceased "could not have been caused by any of the impacts" of dropping the dead body on the ground by the defendant while transporting it to the deep wooded area where he left it. This contention is clearly without merit. Hill was then dead as the result of the gunshot wound.

The detailed statement of the defendant testifying on the trial has been read in full in general conference and will appear in the reporter's statement of the case.

The evidence is without dispute that the defendant shot Hill in the back with a twelve gauge shotgun and the wound caused his death. The last defendant saw of Hill before he shot him was when Hill, walking away from the defendant, had become entangled in a treetop and had fallen to the ground. When defendant fired the shot causing Hill's death, he could only see the bulk of Hill's body and could not tell whether he was facing defendant or walking away from him.

■ We are of opinion that the defendant's testimony when viewed in the light of all the testimony in the case was not sufficient to warrant the conclusion, as a matter of law, that at the time the fatal shot was intentionally fired by the defendant, *he was in actual impending peril of losing his life or of suffering* grevious bodily harm or that a reasonable avenue of retreat was not open to him. O'Rear v. State, 188 Ala. 71, 66 So. 81; Jackson v. State, 77 Ala. 18; Perry v. State, 211 Ala. 458, 100 So. 842; Holmes v. State, 100 Ala. 80, 14 So. 864; McGhee v. State, 178 Ala. 4, 59, So. 573.

■. As to whether the circumstances confronting the defendant at that time were sufficient to lead a reasonable man, so situated, to the belief that such peril existed or want of reasonable avenue of retreat was lacking and that the defendant so honestly believed, the evidence presented questions for jury decision. Bluitt v. State, 161 Ala. 14, 49 So. 854; Bluett v. State, 151 Ala. 41, 44 So. 84.

■ The testimony of the defendant shows that he was not so under the influence of liquor or drugs at the time of the killing that he was not in possession of his wits and able to understand and appreciate the consequences of his acts. His testimony shows that the liquor and drugs he consumed to excess was after he killed Hill. After the killing the defendant's course of conduct was not such as to indicate he felt justified, under the doctrine of self-defense, but indicated a deep conviction of his guilt and hence he resorted to the ruse of falsely denying the killing and in undertaking to dispose of the body of the deceased in a deep wooded area infrequently visited by human kind, where the vultures of the day and the jackels of the night in the course of time would destroy it.

■ The court did not err in refusing the motion to exclude all the evidence, in refusing the affirmative charge or in overruling the motion for a new trial.

■ There were no exceptions reserved by the defendant to the oral charge of the court and nothing is presented by the criticism of counsel in respect to such charge for review. Easley v. State, 246 Ala. 359, 20 So.2d 519; Haygood v. State, 252 Ala.

3, 38 So.2d 593; Ball v. State, ·252 Ala. 686, 42 So.2d 626.

■ Charges 4 and 5 requested by the defendant were refused without error.

We have examined all questions presented on the record and find nothing that warrants a reversal of the judgment of conviction.

Affirmed.

All the Justices concur.