286 So.2d 85

**Jimmy Lee MITCHELL**

v.

**STATE.**

**8 Div. 410.**

Court of Criminal Appeals of Alabama.

Nov. 13, 1973.

Raymond Murphy, Florence, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was put to trial on a three-count indictment charging: (1) burglary in the second degree, (2) grand larceny, and (3) buying, receiving, concealing or aid in concealing stolen property. The jury returned a verdict of guilty on all counts. He was sentenced to three years imprisonment in the penitentiary. He was represented by a court-appointed lawyer who also represents him on this appeal. At arraignment he interposed a plea of not guilty.

In the early morning hours of March 13, 1973, a music store owned and operated by Bernard Pope Cantrell, Jr., in Florence, Alabama, was broken into and three amplifiers and five guitars were stolen. The value of the instruments and amplifiers exceeded four thousand dollars.

At approximately 3:48 A.M. on the day in question, a city policeman was on foot patrol in the uptown business district of Florence when he heard glass breaking in the direction of North Court Street where the music store was located. In looking up the street, he observed two colored males standing in front of Cantrell's Music Center. One had on a bright yellow coat and was short and stockily built. The other one was tall and slender and had on dark clothes. At this point the officer was within a half block from these two individuals. The street lights were on and visibility was good. He observed a third colored male, wearing dark clothes and a "flop" hat, come out of the music store carrying something large. The officer started running down the sidewalk toward these three people who separated and began running—two in one direction and one in another direction. The officer had a walkie-talkie and called the police station to report a break-in at the music center.

The officer started looking for the two men who ran in the direction of Court Street. He heard a car engine start up at Dixie Tire Company located a short distance away and he ran in that direction and saw the tail lights of an old model Buick come on. He radioed to an uptown patrol car and told the officers that he thought the men who broke in the music center were leaving the tire company in an old model Buick.

The uptown patrol car received the message and blocked the Buick. The three colored men got out of the Buick and started toward the officer. The officer began to back toward his patrol car as he pulled his pistol. The men were still converging on the officer when he told them to "halt" or he would shoot. These men then dispersed and started running. One was apprehended within seventy-five (75) feet, one got away and appellant was chased by an officer who kept asking him to halt. He ignored the command of the officer. The officer realized he could not overtake appellant and fired a warning shot into the ground and again called on him to halt. Appellant started running faster and the officer fired his pistol directly at him and shot him in the leg. He fell where he was shot which was approximately 359 feet from where the chase began. While appellant was lying on the ground, an officer rendered him first aid and observed that he had on a dark leather jacket and a black floppy hat.

The testimony developed that appellant was the driver of the old Buick model car on the night of the burglary and he used a tire tool to break the glass in the front door of the music center. He was the one of the trio who entered the store and brought out the musical instruments and handed a part of them to the other two standing on the sidewalk to carry to the car. The guitars and amplifiers were in "plain view" of the officers when they stopped the Buick automobile.

Appellant testified in his own behalf and denied that he participated in the burglary in any way. He said he borrowed his girlfriend's car to take one of the boys home. On the way the boy said something about breaking in the music store and asked him to park the car at a tire company about a block away. The boy asked them to go with him and appellant protested. He followed the boy some distance behind and was not present when the glass door was broken. The next thing he knew a guitar was placed in his hand while he was standing on the sidewalk in front of the store; that he carried the guitar to the car but he did not put it in the car as he did not want to have anything to do with this business; that he got in the car and told the other two that he was going to drive back to the music center and return everything that had been taken from the store a few minutes earlier; that after driving a short distance he was blocked by a police car. He maintained his innocence throughout the trial.

One of the other participating boys testified on rebuttal for the state. He said the burglary originated in the mind of appellant and appellant alone broke the glass door of the music store and entered the place of business. He emphatically denied that appellant ever maintained that he was going to return the stolen goods.

Both appellant and the witness on rebuttal testified to their previous felony convictions and to having served time in the penitentiary.

Appellant's appointed counsel, with commendable candor, has filed what amounts to a "no merit" brief. For, indeed, there is no error in the record. In brief he says:

"It is the opinion of this attorney, appointed by the court, and in trying in every legal way to examine the entire case looking for errors in the manner of the trial, that the trial was fairly conducted. If I did not continually object during the trial it was because I saw no legal injury

in the questions asked and answers given.

"In most instances I believe it appropriate that attorneys be appointed for indigents, to hold other wise might cause injustice to innocent parties. When I am so appointed I do my homework and in trying the cause, use all of the proper information I have learned in the defense of the case. I, in this case, used all I had and all I had been able to obtain and the jury said it was not enough. I leave the cause with the appellate court on that point (insufficiency of the state's evidence) and if the jury was basing its findings on insufficient testimony, the cause should be reversed. If it is not, I shall still have the satisfaction of feeling that I fully discharged my legal duty in said case."

■ All persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must be indicted, tried and punished as principals. Title 14, Section 14, Code of Alabama 1940.

■ This was a "hot pursuit" case. Appellant was seen by a police officer walking out the music store with something large in his hands. He and his two companions fled and two of them were captured within minutes after the burglary though appellant had to be shot to prevent his escape. The stolen instruments were in plain view of the car he was driving. The state's evidence overwhelmingly pointed the finger of guilt at the accused and the jury so found. These parties were caught "red handed" in the commission of the burglary. If the witness who testified against appellant was *particeps criminis* in the commission of this offense and his testimony needed corroboration, there was ample corroborative testimony upon which to predicate a conviction. Alabama Digest, Criminal Law ☞507(1).

■ The decision of the trial court in denying a new trial on the ground of in-

sufficiency of the evidence will not be disturbed on appeal, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. Bridges v. State, 284 Ala. 412, 225 So.2d 821; Miles v. State, 257 Ala. 450, 59 So.2d 676; Cobb v. Malone, 92 Ala. 630, 9 So. 738.

As in duty bound we have carefully searched the record for errors and have found none.

Affirmed.

All the Judges concur.