The appellant, Jimmy Dean Miller, was found guilty of murder and sentenced to 18 years in the state penitentiary, pursuant to the Habitual Felony Offender Act. The appellant's case was consolidated for trial with the actions against three co-defendants.
Deputy Jim Taylor was shot in the chest when two men, Coy Patrick Crowe and Billy Don Hass, attempted to break Crowe's brother out of jail. Deputy Taylor died as a result of the gunshot wound. Both men were charged with capital murder; Hass testified for the State during Crowe's trial. *Page 803 
The testimony presented at trial was conflicting as to the appellant's role in planning the jailbreak. The State presented evidence that the "getaway" car was seen at the appellant's house on the night in question, and, that after the car was recovered following the offense, fingerprints which were removed from the car were identified as matching those of the appellant. However, the fingerprint examiner testified that there was no way to determine the age of the fingerprints.
The key witness for the State was Bobby Lee Miller, who was no relation to the appellant, Jimmy Dean Miller (hereinafter referred to only as "the appellant"). Miller testified that he was asked by the appellant if he would go to Morgan County and post bail for Billy Don Hass, which Miller did. Miller further testified that he drove Hass back to the appellant's trailer, where they "sat around for a little while that afternoon" and "broke into a conversation about going up to the Winston County Jail." Miller testified that Billy Crowe, the appellant's nephew and brother of Coy Patrick Crowe and Jonathan Crowe, was in prison in the Winston County Jail. Miller testified that previously, on the Fourth of July, Miller had declined Crowe's request to help him break Billy Crowe out of jail. Miller testified that a second conversation concerning the jailbreak took place at the appellant's trailer after Miller has posted bail for Billy Don Hass. Miller testified that the appellant, Jonathan Crowe, Billy Don Hass, and Coy Patrick Crowe were all present when he again declined a request to help in the jailbreak. Thereafter, the group walked into a bedroom at the appellant's trailer, where Coy Patrick Crowe pulled out a diagram of the Winston County Jail. Miller testified that the appellant was showing Billy Don Hass and Coy Patrick Crowe the details of the diagram and indicating the different locations of the jail. Miller further testified that the appellant told Coy Patrick Crowe "that if something wasn't done, that if [Billy Crowe] wasn't helped, that they were going to fry him in Winston County for the capital murder charge that they was [sic] holding him on." Miller explained that Coy Patrick Crowe and Billy Don Hass were to drive to the jail and break out Billy Crowe, while the appellant and Jonathan Crowe were to clean out the chicken house in order to hide the getaway car following the jail break. Miller testified that the appellant suggested cleaning out the chicken house for that purpose. Miller testified that, on the day in question, at approximately 1:30 in the morning, Coy Patrick Crowe and Billy Don Hass were leaving the appellant's trailer to attempt the jailbreak. Miller stated that he observed Coy Patrick Crowe with a hand gun and Hass with a sawed-off shotgun. He stated that the appellant and Jonathan Crowe were also outside with them and wished Hass and Coy Patrick Crowe good luck.
The State also presented testimony of Janette Hames, who was present at the trailer when Coy Patrick Crowe and Billy Don Hass left to attempt the jailbreak. She testified that after they left, the appellant and Jonathan Crowe were discussing some information concerning the jail which was being transmitted over a Bearcat scanner located in the trailer. She further testified that although she could not remember the specifics of the conversation, she believed that, in talking to the appellant, Jonathan Crowe stated, "They got in."
Billy Don Hass testified for the defense. Hass testified that on the afternoon prior to the jailbreak, the appellant, Coy Patrick Crowe, and he drove to a service station and purchased some Stop Leak for his tires. They then drove to the junk yard and purchased a spare tire. Hass testified that there was no discussion about the jailbreak while they were in the car. He further testified that every conversation concerning the jailbreak that took place occurred only between Coy Patrick Crowe and himself, with no one else present. He testified that Coy Patrick Crowe drew and explained the diagram of the jail to him. He testified that at approximately 1:30 or 2:00 a.m., Coy Patrick Crowe and he left to attempt the jailbreak. Hass testified that he was charged with capital murder for the offense and testified for the State in the case against Coy Patrick Crowe. *Page 804 
The appellant's case was consolidated with the cases against his wife, Jonathan Crowe, and Dorothy Herron, Jonathan Crowe's girlfriend.
 I
The appellant alleges that his testimony from his bond hearing should have been suppressed because he was not read hisMiranda rights and his testimony was "not intented to be a matter of public record." The record indicates that the following transpired at trial:
 "[DEFENSE COUNSEL]: First of all, I'd like to ask for a ruling on our written motion to suppress that I filed Tuesday, if I could get one, suppressing the evidence on the bond hearing. Has the Court made a ruling yet?
"THE COURT: I don't remember, I don't recall.
 "[PROSECUTOR]: Judge, the State never did offer anything on the bond hearing in this case.
 "THE COURT: I don't think its gotten to be an issue yet. So —
 "[DEFENSE COUNSEL]: I just want to be on record that there is no ruling.
"THE COURT: All right."
Subsequently, the following occurred:
 "[DEFENSE COUNSEL]: For the record, I would move for the Court to rule on my written motion to suppress I filed Tuesday, I believe, relative to the bond hearing.
"THE COURT: Overruled.
 "[DEFENSE COUNSEL]: Are you overruling the motion to suppress?
 "THE COURT: But I'm not ruling that the evidence is admissible.
 "[DEFENSE COUNSEL]: Well, that ain't hardly possible, is it, Judge? I mean —
 "THE COURT: Sure it is, because the conditions will dictate. If the right conditions are met, then it comes in in the proper form —
"[DEFENSE COUNSEL]: Oh. Okay. I'm sorry.
 "THE COURT: — And it could come in. But it could be — it could not be admitted simply because its not shown to be relevant."
The record indicates that the State never introduced any evidence of the testimony from the bond hearing; therefore, the appellant suffered no prejudice. See Chapman v. California,386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
Furthermore, we note that the appellant's claim that he should have been read his Miranda rights prior to testifying at his bond hearing is without merit. The United States Supreme Court held, in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), that a person must be adequately and effectively apprised of his rights before he is subjected to custodial interrogation. Miranda applied to extrajudicial confessions obtained by the police or other such authorities during interrogation and while the appellant is held in custody. Such is not the case where the appellant testifies at a bond hearing. Furthermore, the record indicates that the appellant was represented by counsel at the bond hearing.
The testimony at the bond hearing clearly indicates that the appellant never confessed to the crime, nor was the crime even discussed. While testimony was introduced that he was related to or familiar with some of the other perpetrators, the Judge noted that such was proper inquiry as pertaining to the appellant's social and personal background. Moreover, the appellant's prior convictions were properly considered in determining whether or not the appellant was "a menace to society." Ex parte Carlisle, 57 Ala. App. 216, 326 So.2d 775,776 (Ala.Cr.App. 1975), cert. denied, Carlisle v. State,295 Ala. 396, 326 So.2d 776 (1976).
The trial court did not abuse its discretion in denying the appellant's motion to suppress.
 II
The appellant argues that fingerprint cards which were not introduced into evidence were improperly considered by the jury in reaching a verdict. The record indicates that the jury had retired when these *Page 805 
exhibits were made part of the record; however, all five of the fingerprints cards had been testified to by the fingerprint expert. The following transpired, at trial, after the jury retired to deliberate:
 "THE COURT: All right. Let the record show that about two or three minutes ago the bailiff informed me that the jury had inquired as to the five fingerprint cards that were marked for identification and were testified to by John Vaughn, the fingerprint expert, and they were wondering why they had not been submitted along with the other documents. And in checking, we have determined that they had been marked for identification, that they had not been ever offered nor accepted or received into evidence. And I propose at this time — I've looked at them and I don't find any extraneous material on them. I don't know what purpose the jury wants them, but I'm of the opinion that they're entitled to look at them. But I want to let the attorneys for the defense object to it in the record if they so desire.
 "First, it will be Mr. Griffith on behalf of the defendant Jimmy Dean Miller.
 "MR. GRIFFITH: I object to them adamantly, because I didn't address myself to them in the closing argument because they were not part of the record. I kept up with it closely and they never did go into the record, and I felt like they were immaterial and irrelevant. I did not address myself in closing argument, and I do not want them to go to the jury room.
". . . .
 "THE COURT: Okay. At this time I'm going to order to be made part of the record State's Exhibit 26, 27, 28, 29 and 30; and they are the prints lifted and testified to by John Vaughn.
"MR. GRIFFITH: May I see them.
"THE COURT: (Complying.)
"(There was a discussion off record.)
 "MR. GRIFFITH: Well, if these go in, I would want all of the other fingerprints to go in, too.
"(There was a discussion off record.)
 "THE COURT: He never testified about them, though. This is the only one —
"MR. GRIFFITH: Judge, he testified to all of them.
 "THE COURT: No. He didn't identify — these were the only ones that he identified.
 "MR. GRIFFITH: Judge, that's absolutely unfair to me at this point in the trial.
 "THE COURT: No. It's already in. And they should have been put in.
 "MR. GRIFFITH: They should have been put in, but the point is they were not put in. So they are not evidence in this trial.
 "THE COURT: Yeah, they are evidence in the trial. He's already testified about it.
 "MR. GRIFFITH: He's testified about it, but the exhibit wasn't put in, Your Honor. His testimony is in the trial, but this stuff is not in the trial.
 "THE COURT: Well I don't see what the jury wants with them, but they just said they wanted to see them.
"MR. GRIFFITH: I object adamantly to them.
 "THE COURT: The only evidence that they can get from them is already in the record.
"MR. GRIFFITH: I understand that.
 "THE COURT: Note his objection, and go ahead and send them to the jury room."
Section § 15-14-4, Code of Alabama (1975), provides:
 "The court may, at its discretion, at any time before the conclusion of the argument, when it appears to be necessary to the due administration of justice, allow a party to supply an omission in the testimony on such terms and under such limitations as the court may prescribe."
"Although it is within the discretion of the trial court to reopen the case after the close of evidence, it is clear that cases construing § 15-14-4 have consistently held it to be error to do so after submission of the case to the jury."Harris v. State, 371 So.2d 979, 983 (Ala.Cr.App. 1979), and cases cited herein. See also Reed v. State, *Page 806 475 So.2d 641 (Ala.Cr.App. 1985) (wherein the trial court improperly allowed the jury to have three additional pages of a report after only one page of the report had been referred to during the course of the trial). However, in Jolly v. State,405 So.2d 76 (Ala.Cr.App. 1981), the trial judge allowed in a photographic negative, which the jury requested to see after they had begun their deliberations, which depicted a tag appearing on the automobile used by the robbers. During the course of the trial, the actual negative was not admitted into evidence. The trial court noted that there had been oral testimony "about everything about the negatives," as well as the police officer's testimony concerning "what the tag said."Id., at 77. On appeal, this court stated:
 "Where real or demonstrative evidence has not been formally introduced in evidence, the fact that it has been used in connection with the giving of testimony makes it evidence in the case and proper to go before the jury in its deliberations. Smith v. State, 344 So.2d 1239, 1241
(Ala.Cr.App.), cert. denied, Ex parte Smith, 344 So.2d 1243 (Ala. 1977); C. Gamble, McElroy's Alabama Evidence, Section 123.01(6) (3rd ed. 1977).
 "The negative conveyed no information that had not been emphatically conveyed to the jury during the trial. The officer's testimony on what the negative depicted was clear and unequivocal. Under these circumstances, we fail to see how the admission and viewing of the negative prejudiced the defendant. Merriweather v. State, 364 So.2d 374
(Ala.Cr.App.), cert. denied, Ex parte Merriweather, 364 So.2d 477 (Ala. 1978)."
Jolly v. State, supra, at 77-78. See also Nagem v. City ofPhenix City, 488 So.2d 1379, 1385 (Ala.Cr.App. 1986). But cf.,Ex parte Batteaste, 449 So.2d 798 (Ala. 1984) (trial court improperly required the defendant to stand before the jury and allow them to view his face and determine whether he had a scar, after they had begun to deliberate).
 III
The appellant argues that the trial court improperly denied his motion for severance based on conflict of interest and insufficiency of the evidence. The appellant argues that the only evidence presented against him was raised through the testimony of accomplices to the murder. However, as the appellant acknowledges, the witness whose testimony most directly connected the appellant with the offense was Bobby Lee Miller. Miller was never indicted for this murder, nor was he an accomplice as a matter of law.
 "Whether a witness is an accomplice may be a question of law or fact, depending on the circumstances. [Citation omitted.] However, the question of complicity is usually a question of fact; it becomes a question of law only where the court is clearly convinced by a preponderance of the evidence that the witness could have been indicted and convicted of the same charge of a felony for which the defendant is on trial and that the witness freely participated in the crime. Where there is no conflict in the testimony, the question of whether a witness is an accomplice is a question of law for determination by the trial court. [Citation omitted.]
 " 'The question of law for the court resolves itself into one of undisputed evidence. If this, taken altogether most favorably toward the noncomplicity of the witness, still leaves unchallenged acts which would support a verdict of guilt of the witness, then the court, if requested, must require the State to adduce corroboration.' Leonard [v. State], supra, 43 Ala. App. [454], 464, 192 So.2d [461,] 469.
 "Thus where there is doubt or dispute whether a witness is in fact an accomplice, the question is for the jury and not the trial court. [Citation omitted.] Where there is doubt whether a witness is in fact an accomplice, and the testimony is susceptible to different inferences on that point, that question is for the jury."
Jacks v. State, 364 So.2d 397, 403 (Ala.Cr.App.), cert. denied,Ex parte Jacks, 364 So.2d 406 (Ala. 1978). See also Yarber v.State, 375 So.2d 1229, 1230 (Ala. 1978) *Page 807 
(wherein complicity was found to be a question of fact for the jury because the witness denied his participation in the crime); Fortier v. State, 515 So.2d 101 (Ala.Cr.App. 1987) (wherein the witness neither admitted nor denied her participation in the offense; therefore, because her testimony was susceptible to different inferences regarding whether or not she was an accomplice, she was not an accomplice as a matter of law).
The evidence must be undisputed that the witness was an accomplice in order to mandate the corroboration of an accomplice's testimony under § 12-21-222, Code of Alabama
(1975). Washington v. State, 401 So.2d 236 (Ala.Cr.App.), cert.denied, 401 So.2d 241 (Ala. 1981). " 'The burden of proving a witness is an accomplice for the purposes of invoking the rule of § 12-21-222 is on the defendant.' Moon v. State,460 So.2d 287, 290 (Ala.Cr.App. 1984)." Hodges v. State, 500 So.2d 1273
(Ala.Cr.App. 1986).
Corroborative evidence does not have to be very strong or sufficient to support a conviction, but evidence which tends to link the accused with the offense will suffice. Watts v. State,491 So.2d 1057, 1059 (Ala.Cr.App. 1986); Miller v. State,290 Ala. 248, 275 So.2d 675 (1973). Circumstantial evidence may be sufficient, McConnell v. State, 429 So.2d 662, 666 (Ala.Cr.App. 1983), and it is the jury's role to determine the weight and sufficiency to be accorded evidence. Lynn v. State,477 So.2d 1365, 1369-70 (Ala.Cr.App. 1984), reversed on other grounds, Exparte Lynn, 477 So.2d 1385 (Ala. 1985).
Bobby Lee Miller testified that he refused to participate in the offense; therefore, he was not an accomplice as a matter of law. The State presented sufficient evidence to sustain the appellant's conviction. Gossett v. State, 451 So.2d 437
(Ala.Cr.App. 1984).
The appellant also argues that he was prejudiced by the trial court's denial of his motion for severance on the basis of conflict of interest. The only specific allegation raised by the appellant concerning this conflict of interest is based on an alleged threat made against Bobby Lee Miller by one of the appellant's co-defendant's, Jonathan Crowe. The appellant contends that Miller testified in revenge "and that his testimony was prejudicial to the appellant."
This court concluded, in Holsemback v. State, 443 So.2d 1371,1376 (Ala.Cr.App. 1983), that "the consolidation for trial of separate indictments against separate defendants is a matter of procedure and does not abridge the substantial right of an accused to a jury trial."
 "Rules of joinder and consolidation are designed 'to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.' Daley v. United States, 231 F.2d 123, 125
(1st Cir.), cert. denied, 351 U.S. 964, 76 S.Ct. 1028, 100 L.Ed. 1484 (1956). Joint trials are 'an accepted and even necessary aspect of our judicial system' and do not constitute a per se denial of due process. United States v. McLaurin, 557 F.2d 1064, 1074 (5th Cir. 1977). Since the rules of joinder, consolidation, and severance are procedural in that they regulate the manner in which an accused's substantive and constitutional right to a jury trial may be exercised, they are within the rule making power of our state supreme court."
Holsemback v. State, supra, at 1376.
 " 'The test of whether a severance should be granted on the ground of prejudice to the defendants is whether under all the circumstances as a practical matter it is within the capacity of the jurors to follow the court's instructions and to collate and appraise the independent evidence against each defendant solely upon the defendant's own acts.' " Faircloth v. State, 471 So.2d 485, 489
(Ala.Cr.App. 1984) quoting Holsemback v. State, supra, at 1378.
"Once joinder has been ordered, severance is within the trial judge's discretion. . . . In making his decision as to whether a motion for severance should be granted, the trial judge should weigh the possibility of prejudice to the defendants against the *Page 808 
public interest in judicial economy and efficiency." White v.State, 479 So.2d 1368, 1373 (Ala.Cr.App. 1985). "To demonstrate that a trial court abused its discretion in denying a motion for severance, a defendant must demonstrate that he suffered compelling prejudice against which the trial court was unable to afford protection." United States v. Pruitt, 763 F.2d 1256,1263 (11th Cir. 1985). " 'For this court to rule that a trial judge abused its discretion in this matter, an appellant has a heavy burden of establishing that he was unable to obtain a fair trial without a severance and that he suffered compelling prejudice which the trial court could not prevent.' " Murray v.State, 494 So.2d 891, 894 (Ala.Cr.App. 1986), quoting Cowart v.State, 488 So.2d 497 (Ala.Cr.App. 1985), overruled on other grounds by McClendon v. State, 513 So.2d 102 (Ala.Cr.App. 1986). "[T]he mere fact that [the appellant] might have had a better chance of acquittal if he had been tried at a separate trial is not compelling prejudice." United States v. Rivera,775 F.2d 1559, 1564 (11th Cir. 1985), cert. denied,475 U.S. 1051, 106 S.Ct. 1275, 89 L.Ed.2d 582 (1986); United States v.Hewes, 729 F.2d 1302, 1319 (11th Cir. 1984), cert. denied,469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985). In UnitedStates v. Tombrello, 666 F.2d 485 (11th Cir. 1982), cert. denied, Tombrello v. United States, 456 U.S. 994,102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982) the appellant contended that he suffered compelling prejudice by being joined for trial with a co-defendant who "was a 'big talker' and a 'targeted man' who was destined for conviction." Id., at 492. However, the Court failed to find such prejudice and noted that none of the defendants testified at the trial and that all of the evidence relating to the conspiracy would have been admissible against each defendant at a separate trial. Id. Such is true in the case at bar. "Compelling prejudice requiring severance" does not result when the evidence is more damaging against the co-defendant than against the defendant. Faircloth v. State,471 So.2d 485, at 490 (Ala.Cr.App. 1984).
 " 'All persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission though not present, must be indicted, tried and punished.' Mitchell v. State, 51 Ala. App. 411, 286 So.2d 85 (1973); Ala. Code 1975, § 13-9-1 (replaced by Ala. Code 1975, § 13A-2-23) ('A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense [he] aids or abets such other person in committing the offense')."
Murray v. State, supra, at 894.
" 'Antagonism of defenses requires severance only where the defenses are so inconsistent that the jury would have to believe one defendant at the expense of the other; the conflict alone establishes the guilt of a defendant.' " Hill v. State,481 So.2d 419, 425 (Ala.Cr.App. 1985), quoting United States v.Drougas, 748 F.2d 8, 20 (1st Cir. 1984). The co-defendants' defenses, in the present case, were compatible and not mutually exclusive. All of the co-defendants denied participating in the murder. See Faircloth v. State, 471 So.2d at 490 (Ala.Cr.App. 1984) (co-defendants both denied assaulting the prosecutrix). Moreover, there has been no showing that the jury had to disbelieve the evidence of the co-defendants in order to believe the evidence of the appellant. Faircloth v. State, supra, at 490; United States v. Badolato, 701 F.2d 915, 923-24
(11th Cir. 1983).
 "While we acknowledge that defendants who are jointly tried will encounter tactical problems, we do not hold that these problems necessarily deny the defendants a fair trial. The provisions of Rule 15.4 [Ala.Temp. Rules of Criminal Procedure] concerning joinder and consolidation are designed to promote judicial economy and efficiency. At the same time, the provisions of Rule 15.4 pertaining to severence are designed to ensure that defendants are not prejudiced by the joinder to the extent that they are denied a fair trial. This rule was promulgated with the knowledge of *Page 809 
the tactical problems likely to be faced by defendants who are tried together."
White v. State, 479 So.2d 1368, 1372-73 (Ala.Cr.App. 1985).
The record is void of any indication that the trial court abused its discretion in denying appellant's motion to sever.
 IV
The appellant argues that the trial court erred in failing to give two requested charges, one stating that Bobby Lee Miller and Janette Hames were accomplices as a matter of law and the other charging that Bobby Lee Miller was subject to the Habitual Offender Act and informing the jury of what his sentence would have been had he been convicted. However, the trial judge did not err in refusing to charge the jury that Bobby Lee Miller and Janette Hames were accomplices as a matter of law, because the evidence did not support such a charge.Brown v. State, 392 So.2d 1248 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1266 (Ala. 1981). Furthermore, the trial court did not err in refusing to charge the jury concerning the application of the Habitual Offender Act to Bobby Lee Miller, in that the requested material was substantially covered by the trial court in its oral charge to the jury. Nolen v. State,376 So.2d 1145 (Ala.Cr.App. 1979), cert. denied, 376 So.2d 1148;Allred v. State, 390 So.2d 1109 (Ala.Cr.App. 1980), cert. denied, 390 So.2d 1114 (Ala. 1980).
The record indicates that the following transpired during the trial court's oral charge to the jury:
 "Under the law of this state a person's criminal record becomes very important in the event that he is convicted of a subsequent felony. And I believe here in this case — if a person has at least three Class C felonies and he is convicted of at least a Class A felony, then by law he must be sentenced to a term in the penitentiary of not less than his natural life. The next most serious punishment that a person could receive after that would be 'sentence to the penitentiary for the term of your natural life with no possibility of parole.' And then, of course, the next and most severe punishment would be death by electrocution.
 "Now, I simply tell you that to help you look at the testimony offered in this case by Billy Don Hass and also the testimony offered in this case by Bobby Miller. In reference and in view of the allegation made by the defense that there had been a deal entered into between the State of Alabama and these two witnesses in order to get their cooperation in this testimony, the purpose again for which this is admitted goes to the credibility of these witnesses. When you look at their testimony, you look at [it in] the light to which its come to you. It helps you, supposedly, to determine how much weight and credibility you want to attach to their testimony, whether you want to believe their testimony, whether you find their testimony germane."
The appellant's argument is not supported by the record. Thus, his conviction is due to be affirmed.
AFFIRMED.
All the Judges concur.