JAMES H. FAULKNER, Retired Justice.
Orlando Gordon was indicted for the capital murder of James Weaver, in violation of § 13A-5-40(a)(2), Code of Alabama 1975. The trial court denied youthful offender status after a hearing. The district attorney subsequently informed the trial court that he did not intend to seek the death penalty, and he waived the punishment phase. The jury found Gordon guilty of capital murder as charged in the indictment, and the trial court sentenced Gordon to life imprisonment without the possibility of parole. Two issues are raised on appeal.
I
Gordon contends for the first time on appeal that his trial counsel’s failure to raise a timely Batson[1] objection presumptively prejudiced him to the point of reversal, and he requests that this cause be remanded to the trial court with instructions to conduct an evidentiary hearing on this issue because, he argues, to do so is in the interest of justice.
In Miller v. State, 568 So.2d 1253 (Ala. Cr.App.), cert. denied, 568 So.2d 1253 (Ala. 1990), this court held that where a matter is not raised at trial and is presented for the first time on appeal, a case may be remanded to the trial court with the instruction that an- evidentiary hearing be held on the issue of ineffective assistance of trial counsel where justice so requires. In Ex parte Yelder, 575 So.2d 137 (Ala.), cert. denied, — U.S.-, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991), the Alabama Supreme Court found that where the State struck 17 of 18 black prospective jurors, a prima facie case of purposeful discrimination was presented and failure of defense counsel to raise a Batson objection is presumptively prejudicial.
*455 This case is clearly distinguishable from Miller and Yelder, supra. The record indicates that the State used three of its fifteen peremptory strikes to remove blacks from the jury and that the defense also struck three blacks from the jury. The resulting petit jury consisted of six blacks, six whites, and two black alternates. The record further indicates that defense counsel was asked by the court if he wished to make a Batson motion and that he declined. Hence, trial counsel did not “fail” to make a Batson motion but rather decided not to raise an objection based on the existing facts and circumstances which did not indicate a legitimate Batson claim.
Although the prosecutor used peremptory challenges to remove from the venire three black members, where the resulting jury has a 50% black composition, there is no prima facie case of racial discrimination in the selection of the jurors. Scott v. State, 599 So.2d 1222 (Ala.Cr.App.1992); Demunn v. State, [Ms. 90-940, October 11, 1991], 1991 WL 238130 (Ala.Cr.App.1991).
Because there is no evidence in the record to support a finding of purposeful racial discrimination in the State’s exercise of its peremptory strikes so as to justify a Batson objection, justice does not require remand for an evidentiary hearing.
II
Gordon contends that the trial court committed reversible error in denying his motion for a judgment of acquittal because there was insufficient corroboration of the accomplice’s testimony.
Under § 12-21-222, Code of Alabama 1975,
“A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient.”
For this section to apply, it must clearly appear that the witness in question is an accomplice. Steele v. State, 512 So.2d 142 (Ala.Cr.App.), cert. denied, 512 So.2d 142 (Ala.1987). The defendant bears the burden of showing that the witness was an accomplice before § 12-22-222 can be invoked. Miller v. State, 518 So.2d 801 (Ala. Cr.App.1987), cert. denied, 518 So.2d 801 (Ala.1988).
An accomplice is defined as “an associate in crime; a partner or partaker in guilt.” Darden v. State, 12 Ala.App. 165, 167, 68 So. 550, 551 (1915). “The test for determining whether a witness is an accomplice is whether he or she could have been indicted and convicted for the offense charged, either as principal or accessory.” Russell v. State, 365 So.2d 343, 346 (Ala. Cr.App.1978). Where a person’s participation in a crime or cooperation with the defendant is motivated by fear, he is not an accomplice. Curry v. State, 502 So.2d 836, 842 (Ala.Cr.App.1986), cert. denied, 502 So.2d 836 (Ala.1987).
Where, moreover, the witness plainly denies participation in the crime, the issue of the witness’s being an accomplice is a disputed fact, presenting a question for the jury. Flanagan v. State, 369 So.2d 46 (Ala.Cr.App.1979). “Where the issue of whether the State’s witness was an accomplice is for the jury, the denial of the accused’s motion to exclude the State’s evidence for insufficient corroboration is not error.” Id. at 48.
The alleged accomplice, Carolyn Denise Sloan, testified that on June 3, 1991, she was living with her three children and a boarder, Cora (“Cocoa”) Armstrong, in Ensley. According to Sloan, on April 2, 1991, the deceased, Willie James Weaver, who lived three houses down from her and who was handicapped as the result of a stroke, paid her $25 to let Cocoa live with her.
Sloan further testified that on June 3, 1991, Gordon came by Sloan’s apartment some time after 7:00 p.m. and that Sloan overheard a conversation between Gordon and Cocoa regarding robbing Weaver. Sloan testified that she allegedly heard Cocoa say that she had a plan and that Cocoa then got up and headed toward Weaver’s house. According to Sloan, Cocoa returned *456 in less than five minutes and told Gordon the plan, whereby Cocoa would open the back door of Weaver’s house. Sloan further testified that Gordon then went into the bathroom and that when he came out, he had a black mask over his face with eyes cut out and he was wearing cut-off shorts. According to Sloan, after Gordon came out of the bathroom, Cocoa passed him something, and when Sloan asked her what it was, Cocoa told her “it was none of her fucking business” and to “shut the fuck up.” Sloan then testified that Cocoa told Gordon to give her 15 to 20 minutes before he came to Weaver’s house. According to Sloan, Cocoa then pulled a gun on Sloan and told Sloan that if Sloan told anybody about the robbery, that they would kill her. Sloan testified that when Cocoa threatened her, Gordon was standing in front of Sloan with a knife in his hand. According to Sloan, when Cocoa left, Gordon walked around Sloan’s house with a knife in his hand and the mask over his face.
Sloan testified that she did not have any part in the plan and that she was not supposed to be the lookout. She testified that she begged them several times not to rob Weaver, that Gordon and Cocoa threatened to kill her if she said anything, and that she was scared.
Sloan further testified that Gordon left her apartment about 15 or 20 minutes after Cocoa had left and that it was approximately 10:00 p.m. when Gordon left. When Cocoa and Gordon returned, Sloan saw that Gordon had black socks on his hands and that Cocoa was wearing white knit “church” gloves. Sloan testified that Gordon stood in her bedroom door holding a knife, a rifle, a long brown case, a wallet, keys, a coin purse, two .38 bullets, and a pistol with a holster and black case. According to Sloan, she had seen the pistol and holster before and they belonged to Weaver. Sloan then testified that she saw Cocoa and Gordon strip the wallet in her bedroom but that she did not see any identification. Sloan testified that she told Gordon and Cocoa “to get this fucking shit out of her house.”
According to Sloan, Gordon then told Cocoa that he thought they should get rid of Sloan because she knew too much, and Cocoa said, “I think she catch my drift.” Sloan said that Gordon and Cocoa laid the items that Gordon had been carrying on the floor, that Gordon told Cocoa to get him a plastic bag from the kitchen, and that Gordon and Cocoa started putting all the items in the bag. Sloan testified that Gordon and Cocoa then gave her $150.00, which Sloan did not want but which she took because, Sloan said, Gordon and Cocoa threatened to kill her if she did not take the money.
According to Sloan, Gordon went to the back door of her apartment and threw the plastic bag filled with said items toward Weaver’s garage.
Sloan then testified that she told Gordon and Cocoa that she was going to take her baby to the store and that Cocoa and Gordon told her that the three of them would leave together. According to Sloan, Gordon had a brown paper bag rolled up underneath the stroller, which he threw in a blue trash bin at the Wavaho convenience store on 20th Street. Sloan said that when they went in the store, she spent $5.00 of the $150.00 that Cocoa and Gordon had given her on two packs of cigarettes and Alka Seltzer antacid, but that she did not tell the cashier about the robbery. According to Sloan, she then left the store with her baby, Cocoa, and Gordon, and they went to Gordon’s house to watch television. Sloan then grabbed her baby 15 minutes later and told Cocoa and Gordon that she was going home. Sloan said that Cocoa and Gordon went to her house with her and that Gordon again threatened Sloan.
According to Sloan, the next morning she went to the store with her baby and then to her mother’s house but she told no one what had happened, because Cocoa and Gordon had threatened to kill her. Sloan testified that she first learned of Weaver’s death around 2:00 p.m. on June 4, 1991.
Sloan was taken to the police station for questioning the following morning, and she did not tell them what happened until several hours later. Sloan testified that she did not know what happened to the remain *457 ing $145.00 that Gordon and Cocoa had forced her to take but that she had left it in her bedroom on a nightstand.
It is clear from the record that Gordon failed to satisfy his burden of showing that Sloan was an accomplice. In the first place, Sloan could not have been indicted and convicted of the offense charged, either as a principal or as an accessory; although Sloan was initially arrested for the capital murder of Weaver, her case was “no billed” by the grand jury.
Secondly, Sloan was not a witness to the crime; she did not plan the crime or have any intent to commit the crime. To the contrary, she asked Gordon and Cocoa not to hurt or rob Weaver, but Gordon and Cocoa left Sloan’s premises and robbed and killed Weaver. There is no evidence that Sloan intended the crime, consented to it, or participated in it.
Even the facts that Sloan spent $5.00 of the money Gordon and Cocoa stole from Weaver and that Sloan did not tell anybody about what she knew until two days after the murder when she was at the police station do not make Sloan an accomplice. Because Sloan testified that Gordon and Cocoa forced her to take the $150.00 and that Gordon and Cocoa had threatened to kill her if she told anyone, there was evidence that Sloan’s cooperation with Gordon and Cocoa was motivated by fear, thereby vitiating any accomplice liability on her part.
Finally, where Sloan plainly denied participation in the crime, the issue of her being an accomplice presented a jury question, and the trial court properly denied Gordon’s motion for judgment of acquittal on this ground. Hence, because the jury found that Sloan was not an accomplice, her testimony was more than sufficient to convict Gordon and did not require corroboration.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of this court.
The judgment of the circuit court is affirmed.
AFFIRMED.
PATTERSON, P.J., and TAYLOR, McMILLAN and MONTIEL, JJ., concur.
BOWEN, J., concurs in result only, without opinion.

. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).